## GUARANTEE TRUST & SAFE-DEPOSIT CO. v. DULUTH & W. R. CO. et al.

(Circuit Court, D. Minnesota, Fifth Division. June 22, 1895.)

### No. 190.

RAILROAD FORECLOSURE—INTERVENTION BY STOCKHOLDERS.

In a special case, where it is alleged that the directors, for the purpose of sacrificing the interests of the stockholders, refuse to defend a suit, a court of equity will permit the stockholders to intervene and become parties defendant, so as to protect their own interests and the interests of the other stockholders who may choose to join them in the defense.

This was a suit by the Guarantee Trust & Safe-Deposit Company against the Duluth & Winnipeg Railroad Company, the North Star Construction Company, and the Safe-Deposit & Trust Company of Maryland, for the foreclosure of a mortgage. Certain stockholders petition for leave to intervene and defend.

T. J. Sherman and Munn, Boyeson & Thygeson, for complainant.

Warner, Richardson & Lawrence and Davis, Kellogg & Severance, for intervenors.

Walter Holcombe, for defendant Duluth & W. R. Co.

Robert C. Hine, for defendants North Star Const. Co. and Safe-Deposit & Trust Co. of Baltimore.

NELSON, District Judge. An action was commenced in this court October 11, 1894, to foreclose a mortgage or trust deed executed by the Duluth & Winnipeg Railroad Company, a Minnesota corporation, on or about July 1, 1889, to secure its bond issue; the North Star Construction Company of New Jersey and the Safe-Deposit & Trust Company of Baltimore being also made defendants. The Duluth & Winnipeg Railroad Company filed an answer October 11, 1894, admitting all the allegations in the complaint, and consented that the complainant have the relief demanded; and on the same day a receiver was appointed, who took charge of its property. The North Star Construction Company also answered, November 21, 1894, alleging, among other things, that its claim is prior, senior, and superior to the mortgage lien of the complainant. The Safe-Deposit & Trust Company, in its answer filed December 21, 1894, alleges that it has a claim superior to the lien of complainant, in that on or about December 2, 1890, the Duluth & Winnipeg Company and the North Star Construction Company entered into an agreement reciting that certain bonds of the Duluth & Winnipeg Railroad Company were put into its hands in escrow; that it has performed its contract, and demands payment for services. In neither answer is there any denial that the complainant is not entitled to a decree of foreclosure, nor any statement of facts which is a defense to the foreclosure proceedings. A decree pursuant to the prayer of the bill, by consent of defendants, was signed January 28, 1895, but has not been entered. In this condition of the cause a petition was presented to the court January 31, 1895, by four persons claiming to be stockholders of the Duluth & Winnipeg Railroad Company, praying that the parties to the suit be ordered to show cause why the decree should not be

vacated, and the petitioners permitted to intervene by answer and by cross bill, interposing the defenses and claims set up in the petition, and that all proceedings be stayed until the further order of the court. An order to show cause was granted upon the petition, and a hearing was had thereunder in May, 1895, upon affidavits read and submitted both by the intervenors and complainant. The petition charges that the suit was collusive and fraudulent, and was induced to be brought, and the answers caused to be filed, by one William C. Van Horne, a person who nowhere appeared as a party in interest in any of the prior proceedings, but is alleged to have a controlling interest in the stock of the North Star Construction Company and of the railroad company, and that the latter had a good, meritorious, and complete defense to the foreclosure proceeding, which was known to the then existing officers and directors thereof. These defenses, as set forth in the petition, may be summarized as follows: First. That the railroad company had no floating debt, was not insolvent at any time specified in the bill of complaint, and was never justly, legally, or otherwise indebted to any one, in any amount, upon said mortgage or bonds; that the latter were executed without consideration, and the bondholders had knowledge of that fact before taking the same. Second. That the bonds were issued in violation of the laws of the state of Minnesota, are illegal and void, and that each bondholder took the same with notice of the facts. Third. That the holders of the bonds, at whose instance this suit was commenced, are estopped to complain of the nonpayment of any interest thereon.

It is alleged in the petition that a portion of the railroad was commenced in the fall of 1888, and completed prior to the summer of 1892, in three sections; that the first section was completed and equipped by a partnership known as the Duluth & Winnipeg Syndicate, and the other two sections by its successor, the defendant the North Star Construction Company; and that all the sections were built under an arrangement made between the officers of the railroad company and the syndicate in the fall of 1888. The terms of this arrangement are set up, and, in substance, are: That the syndicate or its successor was to obtain the right of way, construct and equip said road, according to specifications to be prescribed in said contract or contracts, and for so doing was to receive stocks and bonds, per mile, as follows: 100 shares preferred stock, $10,000 at face value; 150 shares common stock, $15,000 at face value; and 20 bonds of $20,000 face value. That the road was not to be constructed and equipped faster than the syndicate or its successor could, from the stock and bonds, receive net proceeds in cash sufficient to defray the actual cost, and 15 per cent. profit thereon. That the officers and directors of the railroad company were to be such persons as the syndicate or its successor should select from time to time, the road remaining meanwhile under its control and management; and, as fast as the road was completed, the syndicate and its successor should keep and retain possession of, and have the right to operate, the same, and not be accountable for any net earnings, except that until it parted with the possession of, and ceased to use and operate, the railroad, it was to provide for and pay all interest which should meanwhile become due on any of said bonds. The petition then alleges, substantially,

that in January, 1893, the North Star Construction Company, as successor to the Duluth & Winnipeg Railroad Company, and operating it, so far as completed, under the construction contract, was, by the terms of its contract, to provide for all interest which should become due while the railroad was being built; that under the contract with the railroad it selected the directors and managers of the latter company, and fully directed the management thereof, and was not required to build the road further than it could realize, from the stocks and bonds, net cash sufficient to defray the actual cost of so doing, and 15 per cent. profit. The petition further alleges that when this suit was commenced 869 of the bonds issued and secured by the mortgage belonged to the North Star Construction Company, and substantially all of the rest belonged to members thereof, and the holders of the same took them with notice of all the facts; that in December, 1892, at which time it is alleged the construction company had full possession, control, and management of the Duluth & Winnipeg Railroad Company and its road, under its contract with the latter company, said Van Horne made a proposition, in substance, to the construction company, that he and his associates would provide all the capital required to equip and complete the Duluth & Winnipeg Railroad, provided said stockholders would sell to him, or such persons as he should designate, a majority of their shares in the construction company, and that Van Horne should select and designate the officers and directors of the construction and also of the railroad company; that in January, 1893, said proposition was accepted, and said Van Horne thereby obtained a majority of the stock of the construction company, and designated its officers and directors, and also those of the Duluth & Winnipeg Railroad Company, and by such means the control, management, and operation of the business and affairs of the construction and railroad companies passed into the hands of said Van Horne, and the franchises, property, and affairs thereof were wholly under his control, management, and direction until the railroad company passed into the hands of a receiver. The petition then alleges that the intention of Van Horne was not to perform said agreement on his part, but secretly and fraudulently to obtain entire control and management of the construction and the railroad companies, and to so manage the same as to render them both insolvent, and unable to pay interest, whereby a foreclosure of the mortgage and a sale of the railroad would be brought about, and by such means to obtain possession of the property of these companies for a nominal amount, with the intent of defrauding the petitioners and other stockholders out of their interest therein; that thereafter the officers and directors of both said companies did act under the direction and instructions of Van Horne in relation to the control and operation of said railroad; that Van Horne has never completed or equipped, or furnished any capital for said railroad, and, instead of building up or promoting the interests of the same, has uniformly discouraged traffic over said road, and discriminated against it, in favor of the Duluth, South Shore & Atlantic Railway Company, and has acted for parties (of whom he was one) owning a majority interest in the latter road.

In the view taken by me, it is unnecessary to consider the charge made that the bonds are invalid and void by virtue of the laws of the state of Minnesota enacted March 7, 1887. While it is true that there is no explicit charge, in terms, of collusion between the trustee, the complainant in the foreclosure suit, and Van Horne, yet the facts set forth in the petition show that by the terms of the contract between the North Star Construction Company and Van Horne, the latter was enabled to obtain possession of the road and manage its affairs; and if it can be proved that the railroad company was so managed by him, as charged in the petition, with the fraudulent intent and purpose to render the company insolvent, to bring about a default in the payment of interest, and thus obtain the property and ownership of the railroad company on a foreclosure sale, and defraud the petitioners and other stockholders out of their entire interest, a court of equity should grant relief. The rule is well settled that in such cases the stockholders may intervene to protect their own interests. As stated by the United States supreme court, in the case of Bronson v. Railroad Co., 2 Wall. 302:

"Undoubtedly, in the case supposed, it would be a reproach to the law, and especially in a court of equity, if the stockholders were remediless. But in such a case the court, in its discretion, will permit a stockholder to become a party defendant for the purpose of protecting his own interests. * * * It is true, the remedy is an extreme one, and should be admitted by the court with hesitation and caution; but it grows out of the necessity of the case, and for the sake of justice, and may be the only remedy to prevent a flagrant wrong."

True, Van Horne, in his affidavit, denies the allegations in regard to the proposal made to the North Star Construction Company to build the Duluth & Winnipeg Railroad upon the conditions set forth in the petition, and alleges that the same is in writing, and will speak for itself; but what the contract contained is not clearly set forth. It is not possible to settle the conflicting rights of the parties interested upon affidavits. The allegations of a fraudulent purpose to sacrifice the interests of the stockholders entitle the petitioners to a hearing upon evidence taken in the usual course pursued in equity cases. Whether those allegations can be sustained is a question for future determination. Prayer of petitioners is granted, and 20 days' time is given to put in an answer and to prepare and file a cross bill. Ordered accordingly.